UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| MARK DOUGLAS P., <br><br> Plaintiff, <br><br> vs. <br><br> MARTIN J. O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | Case No.  1:23-CV-00490-REP <br><br> **MEMORANDUM DECISION AND ORDER** |

Pending is Petitioner Mark Douglas P.'s Petition for Review (Dkt. 1) and an accompanying Brief in Support of Petition to Review (Dkt. 15) appealing the Social Security Administration's final decision finding him not disabled and denying his claim for disability insurance benefits.  *See* Pet. for Rev. (Dkt. 1).  This action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order.

## BACKGROUND

Petitioner is a sixty-three-year-old man who has suffered from hydrocephalus since childhood and has undergone several brain surgeries to treat his condition.  AR 29, 537.  More than a decade ago, on October 18, 2012, Petitioner filed an application for social security disability income ("SSDI") alleging a disability onset date of July 11, 2011.  AR 26.  In order to evaluate Petitioner's claim, the Social Security Administration arranged two consultative examinations: (i) an April 24, 2013 psychological examination with Zoe Collins, Psy.D. and (ii) an April 29, 2013 physical examination with Frank Chen, M.D.  AR 537-539 and 543-545.

**MEMORANDUM DECISION AND ORDER - 1**

After these examinations were completed, Petitioner's claim was denied initially and on reconsideration. AR 26. Petitioner requested a hearing in front of an Administrative Law Judge ("ALJ"). *Id.* On September 25, 2014, the claim went to a hearing before ALJ John J. Flanagan. AR 156-165. On December 8, 2014, ALJ Flanagan issued a decision that was unfavorable to Petitioner. AR 165. In this decision, ALJ Flanagan noted that he was giving Dr. Chen's opinion "little weight" because the opinion was not supported by his evaluation and Dr. Chen had been "removed . . . as a contract medical consultant due to his examinations being below DDS [Disability Determination Service] standards." AR 164. Given these issues, ALJ Flanagan elected "not [to] rely on [Dr. Chen's] opinion." *Id.* Unfortunately, ALJ Flanagan "considered [Dr. Chen's] physical examination as part of the record as a whole." *Id.*

Petitioner appealed ALJ Flanagan's decision to the Appeals Council and the Council denied Petitioner's request for review. AR 26. Approximately five months later, the Social Security Administration entered a class action settlement agreeing to give claimants impacted by Dr. Chen's evaluations an opportunity to reopen their claims. AR 172 and *Hart v. Colvin*, No. 15-CV-00623-JST, 2017 WL 9288252, at *1 (N.D. Cal. Apr. 17, 2017).

On September 28, 2017, Petitioner exercised his rights under the *Hart* settlement. AR 245. The Social Security Administration, however, took no action on the request for over four years. *See* Pt.'s Br. at 4 (Dkt. 15); *see also* AR 246-250 and List of Exhibits (Dkt. 12, pp. 2-7). It was not until December 2021 that the Social Security Administration began the process of rescheduling a new disability hearing. AR 250, 480.

On March 31, 2022, the claim went to a hearing before ALJ Michele M. Kelley. AR 26-39. On July 27, 2022, ALJ Kelley issued a decision that was unfavorable to Petitioner. AR 39. In reaching this decision, ALJ Kelley stated that she "did not consider the opinion of Frank

**MEMORANDUM DECISION AND ORDER - 2**

Chen," as required by the *Hart* settlement.  AR 37.  Her decision, however, indirectly relied on Dr. Chen's evaluation.  Specifically, ALJ Kelley gave "significant weight" to the original DDS opinions, which themselves gave "great weight" to Dr. Chen's report.  AR 36, 125-136, 138-152.  The government concedes that the ALJ's inadvertent reliance on Dr. Chen constitutes reversible error.  D.'s Br. at 2 (Dkt. 17).

The only question facing the Court is whether to remand for further proceedings or for an immediate award of benefits.  The government argues that the Court should remand for the procurement of "testimony from a medical expert who can review the record and opine on the extent of Plaintiff's limitations."  *Id.*  Petitioner, by contrast, maintains that an immediate award of benefits is the only remedy that can address the "irreparable" harm caused by the government's "failure to develop the record, honor Plaintiff's rights under the *Hart* agreement, and provide constitutionally sufficient process."  Pt.'s Reply at 2 (Dkt. 18).

## THE CREDIT-AS-TRUE DOCTRINE

When an ALJ's decision is based in error, the district court may remand for further proceedings or for an immediate award of benefits.  *Treichler v. Commr of Soc., Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).  The two remedies, however, do not stand on equal footing.  Under the "ordinary remand rule," "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."  *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016).  The Ninth Circuit has recognized only one exception to the ordinary remand rule, often called the "credit-as-true" rule.  *Leon v. Berryhill*, 880 F.3d 1041, 1044 (9th Cir. 2018).

In its current form, the credit-as-true rule permits district courts to order an immediate award of benefits if, and only if, (i) the ALJ failed to provide legally sufficient reasons for

**MEMORANDUM DECISION AND ORDER - 3**

rejecting evidence, (ii) the record has been fully developed and further administrative proceedings would serve no useful purpose, and (iii) the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Dominguez*, 808 F.3d at 407; *see also Washington v. Kijakazi*, 72 F.4th 1029, 1041 (9th Cir. 2023). Even if these elements are satisfied, district courts "retain 'flexibility' in determining the appropriate remedy." *Dominguez*, 808 F.3d at 407. Where "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled," a court should never remand for an award of benefits. *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014). "A claimant is [simply] not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r of the SSA*, 635 F.3d 1135, 1138 (9th Cir. 2011).

## DISCUSSION

I. The Credit-As-True Analysis

As Defendant points out, the credit-as-true doctrine is a poor fit for the blunders and delays that have stymied Petitioner's case. On appeal, Petitioner's primary claim of error is that the Social Security Administration failed to timely "provide a second hearing and order a consultative examination to replace Dr. Chen's tainted examination" after Petitioner elected to exercise his rights under the *Hart* settlement. Pt's Reply at 3 (Dkt. 18). As a result of this error, Petitioner claims that "there is now insufficient evidence in the record to reach a decision on the period at issue." *Id.*

The credit-as-true rule was not designed to remedy such mistakes. For the credit-as-true rule to apply, there must be evidence in the record, whether a medical opinion or claimant testimony, which the ALJ improperly rejected, and which, if credited, would dictate a finding of

**MEMORANDUM DECISION AND ORDER - 4**

disability. *Dominguez*, 808 F.3d at 407. Delays, no matter how lengthy, and failures to adequately develop the record, no matter how glaring, do not satisfy these criteria. *Strauss*, 635 F.3d at 1138. Credible evidence of disability is necessary.

Petitioner only identifies one such piece of evidence: the opinion of his therapist, Eleanor Souza. Pt.'s Reply at 5-6 (Dkt. 18).[1] On April 18, 2014, Therapist Souza opined that Petitioner was unable to work due to severe depression and other brain impairments. AR 562-568. The symptoms and limitations Therapist Souza endorsed were extreme. For example, Therapist Souza attested that Petitioner had "vegetative symptoms." AR 563. In addition, Therapist Souza found that Petitioner possessed little to no "useful ability" to perform a wide array of basic tasks, including: (i) understanding and remembering very short, simple instructions, (ii) making simple work-related decisions, (iii) being aware of normal hazards and taking appropriate precautions, and (iv) using public transportation. AR 565-566. Finally, Therapist Souza rated Petitioner's deficiencies of concentration, persistence, or pace as "constant." AR 566. There is no question that the ALJ would have been required to find Petitioner disabled had she credited this statement.

The problem for Petitioner is that there are ample reasons, completely unrelated to Dr. Chen's physical evaluation, to question the reliability of Therapist Souza's mental status opinions. First, as both ALJs noted, Therapist Souza's opinions are unsupported by any underlying treatment notes. AR 36, 164. This can be a valid basis for rejecting a medical opinion. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) ("an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings") and *Holohan v. Massanari*, 246 F.3d 1195, 1202 n. 2 (9th Cir. 2001) (a medical

---

[1] Petitioner also argues that the ALJ failed to properly analyze the opinion of the consulting psychologist: Dr. Collins. Pt.'s Br. at 14 (Dkt. 15). But Petitioner never contends that crediting Dr. Collins's opinion would require a finding of disability. *See generally* Pt.'s Reply (Dkt. 18).

**MEMORANDUM DECISION AND ORDER - 5**

opinion is "entitled to little if any weight" where the physician "presents no support for her or his opinion").[2]

Second, the extreme limitations that Therapist Souza endorsed were not documented by any other medical providers. AR 36, 164. The consulting psychologist, Dr. Collins, who examined Petitioner in 2013, found that Petitioner was *significantly* less limited than Therapist Souza believed. For example, Therapist Souza determined that Petitioner had little ability to understand and remember very short, simple instructions. AR 565. Dr. Collins, by contrast, concluded that Petitioner had *no* impairment in this domain. AR 539. Similarly, Therapist Souza opined that Petitioner lacked the capacity to manage any disability benefits that may be awarded. AR 567. Dr. Collins, on the other hand, found that Petitioner had shown an ability to "conduct financial transactions," conserve assets, competently perform financial responsibilities, perceive potential exploitation, and manage his own funds in his best interests. AR 539. These opinions present a genuine conflict, which ought to be resolved by the ALJ in the first instance. *See Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (it is the ALJ's responsibility to determine credibility and resolve conflicts within the record).

---

[2] Petitioner argues that it was improper for the ALJ to reject Therapist Souza's opinion as unsupported by any treatment records, when the ALJ credited the opinions of the state agency reviewers. Pt.s' Br. at 16-17 (Dkt. 15). Petitioner compares apples to oranges. For claims filed before March 27, 2017, the ALJ weighs the supportability of the medical opinions by evaluating whether the source (i) presented sufficient evidence to justify the opinion and (ii) adequately explained the opinion. *See* 20 CFR §§ 404.1527(c)(3) and (f)(1). The types of evidence that can support a medical opinion vary. State agency reviewers do not have treatment notes; they support their findings by reviewing the record, summarizing the medical evidence, and explaining their conclusions. *See* 20 CFR § 404.1527(c)(3). While treating providers can also perform record reviews, it is less common for them to do so. Generally speaking, treating providers base their opinions on their own observations, testing, and evaluation of a claimant. Here, for example, Therapist Souza did not review Petitioner's medical records and draw conclusions therefrom. She based her opinions on seven counseling sessions. AR 562. Therapist Souza, however, failed to present any notes or examples from her treatment sessions to support her dire assessment of Petitioner's mental functioning.

**MEMORANDUM DECISION AND ORDER - 6**

Finally, Petitioner's own statements about his abilities and activities undermine Therapist Souza's opinions. For example, Petitioner claims he follows both written and spoken instructions "pretty well." AR 414. He also reports that he can pay bills, count change, handle a savings account, and use a checkbook. AR 412. Petitioner's conduct supports these claims. As the ALJ emphasized, Petitioner delivered pizzas three nights a week between February 2020 and June 2021. AR 30, 62-63. This is not the conduct of someone who is unable to follow basic instructions or recognize normal hazards.

In summary, Therapist Souza's opinions suffer from conspicuous shortcomings, many of which were flagged by the two ALJs who reviewed Petitioner's claim. AR 30-31, 36-37, 162-164. These shortcomings preclude the application of the credit-as-true doctrine. To begin, the first prong of the credit-as-true analysis requires a showing that the ALJ improperly rejected the evidence at issue. It is arguable whether the ALJ's rejection of Therapist Souza's opinion rises to this level. *See Batson v. Comm'r of Social Sec.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (even if the record does not support one of the ALJ's stated reasons for disbelieving a claimant's testimony, the error will be harmless if the ALJ provides other valid reasons for the decision). Because Respondent does not raise or brief this issue, however, the Court will assume that the ALJ improperly rejected Therapist Souza's opinion.

The next prong of the credit-as-true analysis asks the Court to consider "whether the record has been fully developed, whether there are outstanding issues that must be resolved before a determination of disability can be made, and whether further administrative proceedings would be useful." *Washington*, 72 F.4th at 1041. If inconsistencies in the record raise "crucial questions as to the extent of a claimant's impairment," this prong will not be satisfied. *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). Here, Therapist Souza's opinion directly

**MEMORANDUM DECISION AND ORDER - 7**

conflicts with both (i) Dr. Collins's opinion and (ii) some of Petitioner's own statements. The Court cannot award benefits in the face of such unresolved conflicts. *See*, *e.g.*, *Dominguez*, 808 F.3d at 409 and *Washington*, 72 F.4th at 1042.

Finally, even if Petitioner could satisfy prong two, the Ninth Circuit has repeatedly warned district courts not to remand for an award of benefits if "the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled." *Brown-Hunter*, 806 F.3d at 495 (citing *Garrison*, 759 F.3d at 1021). For the reasons outlined above, the Court has deep reservations about the trustworthiness of Therapist Souza's opinion. While these reservations do not foreclose the possibility that Petitioner is disabled, they raise serious questions about the severity and extent of Petitioner's mental limitations, which are best addressed by a remand for further proceedings. For all these reasons, the Court finds that the credit-as-true doctrine does not apply.

II. <u>Vindicating Petitioner's Due Process Rights</u>

In his reply, Petitioner suggests that the Court should expand the boundaries of the credit-as-true doctrine because a remand for an award of benefits is the only adequate remedy for the allegedly unconstitutional delay. Pt.'s Reply at 2-4 (Dkt. 18). The Court is sympathetic to Petitioner's exasperation. After Petitioner exercised his rights under *Hart*, four years passed without the Social Security Administration taking any action. Respondent offers no explanation or defense for this astonishing lassitude.

Whether this delay rises to the level of a due process violation and, if so, whether a court could ever award benefits as a remedy for such a violation are interesting legal questions. Answering these questions, however, is not necessary to resolve this case. Ninth Circuit case law is clear that delays in the agency proceedings do not override the "general rule that the

**MEMORANDUM DECISION AND ORDER - 8**

decision of whether to remand for further proceedings turns upon the likely utility of such proceedings." *Treichler*, 775 F.3d at 1106. "The touchstone for an award of benefits [remains] the existence of a disability, not the agency's legal error." *Brown-Hunter*, 806 F.3d at 495. Given this case law, the Court agrees with Petitioner the only way a delay could *potentially* justify an award of benefits is if this delay resulted in genuinely irreparable harm.

Petitioner, however, has not presented evidence to support his assertion of such harm. Petitioner contends that his claim can no longer be fairly resolved because the passage of time has made it impossible for a medical expert to reliably opine on his functioning between 2011 to 2015 (the period of alleged disability). Pt.'s Br. at 18-19 (Dkt. 15). But medical experts regularly form retrospective opinions about disability. *See*, *e.g.*, *Flaten v. Secretary of Health & Human Servs.*, 44 F.3d 1453, 1461 (9th Cir. 1995) (explaining that a claimant may establish disability "by means of a retrospective diagnosis") and *Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (acknowledging that medical evaluations made after the period of alleged disability may be "relevant to an evaluation of [a] preexpiration condition"). The *Hart* settlement, which Petitioner elected to join, contemplated such review. In Petitioner's case, for example, if the Social Security Administration had immediately hired a new medical expert to evaluate Petitioner and/or review the case after Petitioner exercised his rights under *Hart*, the review would have postdated Petitioner's period of alleged disability by over two years. Petitioner has not shown that four more years of delay, while painfully slow, decreased the viability of such review.

In these circumstances, the proper course is to remand for additional proceedings. If the Social Security Administration is unable to fairly develop the record on remand – for example, if it becomes clear that no medical expert can reliably opine on Petitioner's functioning during the

**MEMORANDUM DECISION AND ORDER - 9**

period of alleged disability due to Respondent's four years of inaction – Petitioner will be free to reassert a due process challenge to any subsequent denial of benefits.  The Court, however, is not as pessimistic as Petitioner about the feasibility of a retrospective assessment of Petitioner's functioning.  Many of Petitioner's complaints relate to his mental functioning.  AR 100-102, 377, 390, 409, 418.  In assessing this functioning, any new expert will have the benefit of the psychological evaluation performed by Dr. Collins in 2013.[3]  As for his back and ankle pain, Petitioner completed contemporaneous function reports and testified at two disability hearings.  AR 66-73, 91-119, 406-407, 409-416.  A new expert can incorporate this information into any retrospective evaluation or review.

## ORDER

Based on the foregoing, Petitioner's Petition for Review and the Brief in Support of Petition to Review (Dkts. 1 & 15) are **GRANTED** in part and **DENIED** in part.  The decision of the Commissioner is **REVERSED** and **REMANDED** for further proceedings consistent with this decision.

DATED: September 23, 2024

Raymond E. Patricco
Chief U.S. Magistrate Judge

---

[3] This evaluation was performed before Dr. Chen's evaluation and remains untainted by Dr. Chen's report.  AR 537-539 and 543-545.

**MEMORANDUM DECISION AND ORDER - 10**